**SACK & SACK, ESQS.**
110 East 59th Street, 19th Floor
New York, New York 10022
Tel.: (212) 702-9000
***Attorneys for Plaintiff, Rachel Steinmetz***

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

**RACHEL STEINMETZ**,                                   :
                                                        :
                                                        :
                              Plaintiff,                 :      Civ No.  08-5367 (PAC) (THK)
                                                        :
               v.                                        :
                                                        :
**CAPITAL ONE FINANCIAL CORP.,**                        :
**NORTH FORK BANCORPORATION,**                          :
**NORTH FORK BANK, GREENPOINT**                         :      **COMPLAINT**
**MORTGAGE FUNDING, INC.,**                             :
**HARALAMBOS (BOBBY)  TSIOUTAS,**                       :      JURY TRIAL REQUESTED
**DEANNA DIDIER**, and **MATT ROSEN**,                  :
individually**,**                                       :
                                                        :
                              Defendants.                :
-------------------------------------------------------------X

        Plaintiff Rachel Steinmetz ("*Plaintiff*" or "*Steinmetz*"), by her attorneys Sack &

Sack, Esqs., as and for her complaint against Capital One Financial Corp. ("*COF*") ,

North Fork Bancorporation, Inc., North Fork Bank ("*North Fork*"), GreenPoint Mortgage

Funding, Inc. ("*GPM*"), Haralambos Bobby Tsioutas ("*Tsioutas*"), Deanna Didier

("*Didier*"), and Matt Rosen ("*Rosen*", together with North Fork, GPM, Tsioutas, Didier,

"*Defendants*") alleges as follows:

## NATURE OF ACTION

1.      Steinmetz brings this action against her former employer, GPM, following her unlawful and retaliatory termination in connection with her employment in violation of section 806 of the Corporate and Criminal Fraud Accountability Act, Title VIII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514(a)(1) ("*SOX*").

2.      Defendant's actions also violate the provisions of the "whistleblower" anti-retaliation provision of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1831j ("*FIRREA*").

3.      Plaintiff's termination was in retaliation of her complaining and reporting violations of banking fraud and securities fraud and violations of rules or regulations of the Securities Exchange Commission ("*SEC*") and Federal law ("*protected activity*") and 17 CFR § 270, § 275 and § 279, promulgated by the Securities Exchange Commission ("*SEC Code of Ethics*"), and §  17(d) of the Investment Company Act ("*Investment Company Act*").

4.      Specifically, and as described in detail herein, Defendants engaged in egregious forms of banking and mortgage fraud that defrauded and contributed to losses for shareholders of North Fork and COF during the company merger and contributed to the sub-prime mortgage crisis.

5.      Plaintiff, who was employed as a Senior Underwriter for Defendants and who was commissioned to approve or deny mortgages after reviewing applications and all relevant paperwork on behalf of the GPM, a Mortgage Bank, noticed discrepancies,

fraud and other unlawful activities engaged in by borrowers, brokers and executives of Defendants.

6.      Plaintiff took affirmative actions to try to stop and prevent Defendants' unlawful activities and was vociferous about her objections in participating in Defendants' fraud and refusing to approve fraudulent, unlawful and bad loans.

7.      As a direct result of those complaints, Plaintiff was retaliated against and terminated from her gainful employment at Defendants as more detailed herein.

8.      Defendants' actions are in violation of the "whistleblower" anti-retaliation provision of SOX.

9.      Furthermore, Defendants' actions are in violation of the "whistleblower" anti-retaliation provision of FIRREA.

10.     GPM is a "company" or a "contractor, subcontractor or agent" of a "company" under SOX.

11.     The claims made herein are based upon Defendants' unlawful termination of Steinmetz's employment and in connection with Defendants' unlawful denial of terms, conditions and privileges of Steinmetz's employment.

12.     Steinmetz was retaliated against immediately following her engaging in lawful, protected activity as alleged herein.

13.     Steinmetz reported her concerns of illegal activity to "persons with supervisory authority over [her]," and to "other such persons working for the employer who had the authority to investigate, discover, or terminate misconduct."    § 1514A(a)(1)(c).

14.    Steinmetz reported her concerns of illegal activity to Fred Wexler at the New York State Banking Department.

15.    Steinmetz reported her concerns of illegal activity, labor violations and discriminatory behavior to the EEOC.

16.    The SEC Code of Ethics cautions investment advisers **"that it is incumbent on them to create an environment that encourages and protects supervised persons who report violations.  Advisers should consider how they can best prevent retaliation against someone who reports a violation. . ."**

17.    Defendants further violated the SEC Code of Ethics by failing to protect a supervised person, namely Steinmetz, from retaliation for her reporting of violations, and thus, failing to create an environment that encourages reporting and protects supervised persons who report violations from retaliation.

18.    Plaintiff further complains that Defendants engaged in the unlawful discrimination of Plaintiff in the terms, conditions, and privileges of her employment in violation of New York State Human Rights Law, Executive Law § 290 et seq. ("*NYSHRL*") and the Administrative Code of the City of New York § 8-101 et seq. ("*NYCHRL*") based upon her religion, Jewish.

19.    Plaintiff further complains that Defendant engaged in the unlawful retaliation of Plaintiff for her complaints regarding unlawful discrimination in the terms, conditions, and privileges of his employment in violation of NYSHRL and NYCHRL based upon her religion, Jewish.

4

20.    Furthermore, the claims made herein are based upon GPM's breach of the express terms and conditions of Steinmetz's contract for compensation in respect of her employment and continued employment.

21.    Although duly demanded both orally and in writing, GPM has failed and/or continues to refuse to pay to Steinmetz the sums of money unconditionally due her for earned salary, overtime, health insurance, bonuses and profit participation.

22.    GPM denied its obligations to continue to pay to Steinmetz salary, overtime, health insurance, bonuses and profit participation to which she is entitled, "but for" GPM's unlawful retaliatory firing and breach.

23.    Alternatively, GPM owes to Steinmetz the equivalent sum of money, which Steinmetz would have received "but for" the unlawful retaliatory termination of her employment, which sums GPM has secreted, retained and kept for its own benefit and use.

24.    The amounts that were and would be earned by Steinmetz represent wages, bonuses, benefits, wage supplements, and compensation bargained for, earned and belonging to Steinmetz.

**JURISDICTION, VENUE AND CHOICE OF LAW**

25.    Jurisdiction is conferred on this Court by 28 U.S.C.§ 1331 and 1337, § 209(e)(l) and § 214 of the 1940 Act, 15 U.S.C. § 80b-9(e)(l) and § 80b-14.

26.    Venue is appropriate in this district under 28 U.S.C. § 1391(a) and § 214 of the 1940 Act, 15 U.S.C. § 80b-14.  The acts which give rise to this Complaint as well

as certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws took place in this District.

27.     This Court has supplemental jurisdiction over Steinmetz's state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

28.     Plaintiff Steinmetz is an individual residing in the State, City and County of New York.

29.     Steinmetz is an individual protected by the whistleblower provisions of SOX and FIRREA.

30.     At all relevant times herein, North Fork was a company with a class of securities registered pursuant to **§** 12 of the Securities Exchange Act of 1934, and required to file reports pursuant to section 15(d) of the Securities Exchange Act of 1934 therefore was a company subject to the provisions of §806 of SOX.

31.     COF is now the parent company for North Fork and GPM.

32.     North Fork Bank and GPM are subsidiaries of the parent, North Fork Bancorporation, Inc.

33.     North Fork Bancorporation, North Fork Bank and GPM are an integrated employer and thereby a company covered under SOX and FIRREA.[1]

34.     Accordingly, Defendant GPM is subject to anti-whistleblowing statutes pursuant to SOX and FIRREA.

---

1 North Fork Bancorporation, North Fork Bank and GPM are hereinafter referred to as GPM.

35.    Defendant Tsioutas is an individual residing in the County of Queens  At all relevant times herein, Tsioutas was an employee of GPM.

36.    Defendant Didier is an individual residing in the County of Connecticut. At all relevant times herein, Didier was an employee of GPM.

37.    Defendant Rosen is an individual residing in the County of New York.  At all relevant times herein, Rosen was an employee of GPM.

## FACTS COMMON TO ALL COUNTS[2]

---

**STEINMETZ IS WITNESS TO BANKING AND MORTGAGE FRAUD**

---

38.    Beginning September 18, 2005, Steinmetz became employed by GPM as a Senior Underwriter, assigned to the Manhattan Branch located at 404 Fifth Avenue, New York, New York.

39.    On that same date, September 18, 2005, GPM's branch office located at 404 Fifth Avenue, first opened its doors for business.

40.    Beginning on September 18, 2005, Steinmetz reported to Deanna Didier, Operations Manager of the GPM branch.

41.    Since the commencement of her employment, Steinmetz was witness to bank fraud and wire fraud perpetrated and condoned by Defendants through their complicity when they either forced Steinmetz to approve loans that contained fraudulent

---

2. All directly quoted statements, unless otherwise specified, are the sum and substance of such statements as recalled by Steinmetz.

information or they accepted loans that Steinmetz had either denied or made contingent on pending additional documentation.

42.    The concerns raised by Steinmetz are protected by SOX and FIRREA as she had communicated to management a reasonable belief of a violation of 18 U.S.C. 1344 (Bank Fraud).

43.    For example, and as set forth herein in specific detail, on October 31, 2005, November 16, 2005 and January 10, 2006 Steinmetz was asked to approve a specific loan under terms that the borrower did not qualify for.  Steinmetz informed her superior, Mr. Tsioutas and/or Ms. Didier that loan application contained fraudulent and insufficient documentation.   Notwithstanding Ms. Steinmetz's concerns, management overrode her decision

44.    On December 16, 2005 Steinmetz approved a specific loan contingent on the borrower's ability to verify that certain information was truthful and not fraudulent as it appeared to be.  The borrower provided inadequate documentation to disprove that this loan was submitted with fraud.  Despite Steinmetz's protests to Didier and Tsioutas this loan closed in February 2006 using Steinmetz's signature.

45.    On December 22, 2005, Steinmetz underwrote and suspended a third specific loan due to discrepancies in occupancy which disqualified the borrower from the loan program being applied for.  The borrower made multiple attempts to close the loan each time reproving the blatant fraud.  Although Steinmetz declined all of the fraudulent paperwork, she was circumvented by Didier and Tsioutas and this loan closed in her name in late March 2006.

46.     .On January 27, 2006, a fourth specific loan was submitted by a new Account Executive.  The broker admitted to Steinmetz that she had submitted fraudulent documents on behalf of a borrower residing in Pakistan.  Steinmetz made multiple attempts to decline this loan but it closed via Power of Attorney without Steinmetz's authorization.  Management refused to file a SARS report, despite Steinmetz's insistence to do so.

47.     On January 31, 2006, Kyle Heindrichs, an account executive at GPM, tampered with a Home Owners Association Questionnaire.  Immediately upon learning of Heindrichs' actions, Steinmetz reported it to Tsioutas who closed the loan anyway and refused to take action against Heindrichs.

48.     On March 14, 2006, Steinmetz approved a specific loan contingent upon acceptable field review, which was a program requirement and could only be obtained after receipt of an appraisal.  Despite multiple requests by Steinmetz, the broker refused to submit an appraisal.

49.     On April 21, 2006, nearly six weeks later, the broker circumvented Steinmetz's gate-keeping procedures and asked Steinmetz's superior, Didier, to waive the field review, which she did thereby allowing the loan to close.

50.     Between April 3, 2006 & April 5, 2006 Steinmetz suspended and then declined a specific loan due to overstated income, overstated appraised value and a fraudulent tenant lease agreement. On May 10, 2006 Steinmetz was asked to approve paperwork in preparation for closing. At this time she realized that she had been circumvented while out of the office for Passover. Although she protested this to Tsioutas, the loan funded in her name on May 12, 2006.

51.     On April 10, 2006 Steinmetz underwrote a specific file whose occupancy and appraised value were extremely questionable. On April 24th Steinmetz reported to Tsioutas that the appraisal was highly suspect. Steinmetz was circumvented and the remaining conditions were signed off by Tsioutas and Didier and the loan closed on May 3, 2006.

52.     From early March 2006 until May 2006 the branch received a large number of loans from a specific broker in Florida.  Despite many strong indicators of a pattern of fraudulent, Steinmetz was instructed by Tsioutas and Didier that she must approve these loans.  When Steinmetz would protest, Tsioutas would become extremely irate and instruct her that she must overturn her decisions in order to maintain a business relationship with this broker.  Over the course of 2007 this broker closed all operations after multiple cease and desist orders were issued and several states opened investigations on the operations

53.     On May 12, 2006, Steinmetz received a memo by her superiors at GPM suggesting that Steinmetz has been disregarding management's direction of daily underwriting processes, questioning management's guidance, not displaying a team first mentality, and refusing on several occasions to complete loans that had "minor errors."

54.     As described herein, the errors on the loans reviewed by Steinmetz were hardly "minor errors."

**STEINMETZ SUFFERS RELIGIOUS DISCRIMINATION**

55.     Steinmetz's performance at GPM was good.  On information and belief, her performance was comparable to or higher than those of her peers.

56.     Steinmetz's religious observance of the Sabbath required her to refrain from work each week from sundown Friday evening through sundown Saturday.  These restriction also applied to instances of Jewish holidays that would fall out during the workweek.  Although Steinmetz's superiors were aware of and purported to agree to an accommodation for this religious observance, Steinmetz encountered resistance and discrimination from the beginning of her employment at GPM because of her religion.

57.     Indeed, Steinmetz's supervisors scheduled meetings and other important events and set deadlines for Friday afternoons and the eves of holidays in order to harass and discriminate against Steinmetz based upon her religion.

58.     Oftentimes, on Friday afternoon, when Steinmetz reminded her superiors that she needed to leave early, they often responded with expletives, sighs, or outright demands Steinmetz "you cannot leave until all of your work is done!"

59.     In instances when Steinmetz needed to be absent for the Sabbath, despite that her superiors were well aware of her religious observance well in advance, on the eve of the Sabbath or Jewish holidays, Steinmetz's superiors inundated Steinmetz with additional work and unnecessary meetings.

60.    Neither Steinmetz's Sabbath observance nor her absences for religious holidays substantially interfered with her ability to perform her job, and her performance was as good as or better than that of peers who did not observe the Jewish Sabbath.

61.    Nevertheless, Steinmetz's superiors began to retaliate against Steinmetz by providing unwarranted and unsubstantiated poor performance reviews and warnings based upon Steinmetz's written and verbal complaints to human resources and upper management concerning religious discrimination.

> **STEINMETZ IS RETALIATED AGAINST IN VIOLATION OF LAWFUL SOX COMPLAINTS**

62.    On December 5, 2005, Tsioutas was promoted to the position of Underwriting Supervisor.

63.    On May 17, 2006, Robyn Schneiderman, the Senior Underwriter hired in January 2006 to replace Mr. Tsioutas, resigned her position due to "poor management at the branch."

64.    Upon her departure Steinmetz became the sole underwriter at the GPM branch.

65.    Based upon her persistent objections to the illegal manner in which Tsioutas and Didier ran the mortgage business at GPM's Fifth Avenue branch, GPM now feared that Steinmetz, currently the sole underwriter at GPM, would inhibit GPM's ability to process fraudulent, unlawful and bad loans.  Accordingly, GPM, unbeknownst to Steinmetz, engaged in a campaign to retaliate against her for her prior vociferous

objections about participating in Defendants' mortgage and banking fraud and refusing to approve fraudulent, unlawful and bad loans.

66.     On June 12, 2006, in retaliation for her lawful complaints concerning protected activity, Steinmetz was advised by Ms. Didier and Mr. Tsioutas that although Steinmetz underwrote enough loans during the month of May 2006 to earn an incentive bonus, she was <u>not</u> going to be receiving any incentive bonus.

67.     Prior to this meeting, both Tsioutas and Didier made numerous verbal and written promises to Steinmetz that she would indeed receive an incentive bonus in respect of the month of May 2006.

68.     Also at this meeting on June 12, 2006, in addition to having her promise of a bonus unilaterally withdrawn, Steinmetz was informed that she was now responsible for the work of the departed Schneiderman for the foreseeable future in addition to her own responsibilities and that these assignments, double her workload, had to be completed during regular working hours.

69.     These "bait and switch" retaliatory actions engaged in by Tsioutas and , Didier were part of a campaign to retaliate against Steinmetz for her prior vociferous objections about participating in Defendants' mortgage and banking fraud and refusing to approve fraudulent, unlawful and bad loans.

70.     Consequently, on June 12, 2006, Steinmetz was constructively discharged from her employment.

71.     Specifically, at that time, Didier and Tsioutas told Steinmetz:  **"Now that Robyn [Schneiderman] left, we expect that you do *everything* that is**

asked of you.  No questions asked.  To make our point clear, you're not getting paid what we promised you for this month and definitely not what was promised to you next month either.  I don't care what your numbers are!  You are now responsible to complete all of the loans in the branch and everything must be complete within business hours maintaining a 24 hour turnaround."

72.     Accordingly, on June 12, 2006, Steinmetz's superiors deliberately materially made the terms, conditions and privileges of Steinmetz's employment so intolerable in retaliation for Steinmetz's lawful and protected activities that Steinmetz was forced into an involuntary resignation.

73.     On September 8, 2006, Steinmetz filed a complaint under Section 806 of the Corporate and Criminal Fraud Accountability Act, Sarbanes Oxley Act of 2002, 18 U.S.C. § l5l4A with OSHA. The Complaint was docketed by OSHA as Case Number 2-4173-06-056.

74.     Steinmetz filed her OSHA Complaint within 90 days of her retaliatory constructive discharge.

75.     Over 180 days has elapsed since such claim has been filed. Accordingly, all jurisdictional requisites to bring this suit have been satisfied.

## **CLAIMS AND DAMAGES**

76.     Based upon the above allegations, Steinmetz maintains the following legal claims against Defendants:

### **COUNT ONE**
(Retaliation in Violation of 18 U.S.C. § 1514A)

77.     Steinmetz repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

78.     Defendants are contractors and/or subcontractors of companies that are required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 780(d)) within the meaning of 18 U.S.C. § 1514A.

79.     Plaintiff is an employee of the Defendants within the meaning of 18 U.S.C. § 1514A.

80.     The information Plaintiff provided to her supervisors regarded conduct which Steinmetz reasonably believed constitutes violations of rules or regulations of the Securities or Exchange Commission and/or provisions of Federal law relating to fraud against shareholders and/or banking fraud.

81.     The supervisors to whom Steinmetz provided such information (detailed above) each had supervisor authority over Steinmetz and/or had authority to investigate, discover, or terminate misconduct.

82.     In providing this information to her supervisors, Steinmetz engaged in protected conduct.

83.    The Complaints Steinmetz filed with OSHA (detailed above) related to an alleged violation of rules or regulations of the Securities and Exchange Commission and/or provisions of Federal law relating to fraud against shareholders and/or bank fraud.

84.    Steinmetz's managers responsible for the discriminatory actions and/or harassing conduct were aware of Steinmetz's protected conduct.

85.    Steinmetz's protected conduct constituted contributing factors in Defendants' discrimination of and harassment towards Steinmetz.

86.    GPM, through its managers Tsioutas, Didier and Rosen, engaged in discrimination, harassment and constructive discharge of Plaintiff because of and in retaliation for her lawful and protected acts of providing this information to managers and government agencies and/or for filing her Complaints with under 18 U.S.C. § 1514A.

## COUNT TWO
### (Retaliation in Violation of 12 U.S.C.S. § 1831j)

87.    Steinmetz repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

88.    GPM is a bank covered by the provisions of FIRREA.

89.    Steinmetz is an employee entitled to protection under the whistleblowing provisions of FIRREA.

90.    The information Steinmetz provided to her supervisors regarded conduct which Steinmetz reasonably believed constitutes violations of rules or regulations of Federal law relating to banking fraud.

91.    The supervisors to whom Steinmetz provided such information (detailed above) each had supervisor authority over Steinmetz and/or had authority to investigate, discover, or terminate misconduct.

92.    In providing this information to her supervisors, Steinmetz engaged in protected conduct.

93.    Steinmetz's disclosure of relevant information to her supervisors was a "contributing factor" resulting in an adverse employment decision.

## COUNT THREE
(Religious Discrimination in Violation of NYSHRL § 290 et. seq.)

94.    Steinmetz repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

95.    Plaintiff was discriminated against by Defendants on the basis of her religion, Jewish.

96.    Plaintiff was qualified for the position she was employed in by Defendants.

97.    Defendants' discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a direct result of Plaintiff's religion, Jewish, and show an animus of religious bias.

98.    Defendants' animus towards Plaintiff's religion, Jewish, is revealed in instances where similarly situated non-Jewish employees were treated differently than Plaintiff in respect to of the terms, conditions, and privileges of employment.

99.    Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

100.    The aforementioned acts of Defendants constitute unlawful discrimination against Plaintiff in the terms, conditions and privileges of her employment because of her religion and in retaliation against her in violation of the provisions of the NYSHRL § 290 et seq.

101.    As a proximate result of Defendants' aforementioned religious discrimination against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

102.    As a further proximate result of Defendants' actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

103.    As a further proximate result of Defendants' actions taken because of Plaintiff's religion, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

104.    As a result of the foregoing, Plaintiff is entitled to recover from Defendants an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

105.    As a result of the foregoing acts, Plaintiff is entitled to recover an amount no less than $1,000,000 in compensatory damages from Defendants in addition to all other amounts sought herein.

106.    In committing the acts alleged herein, Defendants acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages of at least $10,000,000.00 to adequately punish Defendants and to deter Defendants from continuing and repeating such conduct in the future.

### COUNT FOUR
(Religious Discrimination in Violation of NYCHRL § 8-101 et. seq.)

107.    Steinmetz repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

108.    Plaintiff was discriminated by Defendants on the basis of her religion, Jewish.

109.    Plaintiff was qualified for the position she was employed in by Defendants.

110.    Defendants' discriminatory behavior and then retaliatory termination of Plaintiff's employment were made as a direct result of Plaintiff's religion, Jewish, and show an animus of religious bias.

111.    Defendants' animus towards Plaintiff's religion, Jewish, is revealed in instances where similarly situated non-Jewish employees were treated differently than Plaintiff in respect to of the terms, conditions, and privileges of employment.

112.    Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

113.    The aforementioned acts of Defendants constitute unlawful discrimination against Plaintiff in the terms, conditions and privileges of her employment because of her religion and in retaliation against her in violation of the provisions of the NYCHRL § 8-101 et seq.

114.    As a proximate result of Defendants' aforementioned religious discrimination against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

115.    As a further proximate result of Defendants' actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

116.    As a further proximate result of Defendants' actions taken because of Plaintiff's religion, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

117.    As a result of the foregoing, Plaintiff is entitled to recover from Defendants an amount equal to the value of all compensation to be earned by Plaintiff

had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

118.    As a result of the foregoing acts, Plaintiff is entitled to recover an amount no less than $1,000,000.00 in compensatory damages from Defendants in addition to all other amounts sought herein.

119.    In committing the acts alleged herein, Defendants acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages of at least $10,000,000.00 to adequately punish Defendants and to deter Defendants from continuing and repeating such conduct in the future.

## COUNT FIVE
(Retaliation in Violation of NYSHRL § 290 et. seq.)

120.    Steinmetz repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

121.    Based upon the aforementioned facts, Plaintiff had reasonable belief that Defendants were engaged in unlawful conduct under NYSHRL § 296 (1) (a).

122.    Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities.

123.    Defendants had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities.

124.    As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, Defendants engaged in adverse treatment of Plaintiff, including, inter alia, terminating her employment.

125.    Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

126.    The aforementioned acts of Defendants constitute unlawful retaliation against Plaintiff in violation of the provisions of NYSHRL § 290 et seq.

127.    As a proximate result of Defendants' aforementioned retaliation against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

128.    As a further proximate result of Defendants' actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

129.    As a further proximate result of Defendants' actions taken because of Plaintiff's religion, Plaintiff has and will continue to suffer severe and lasting embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

130.     As a result of the foregoing, Plaintiff is entitled to recover from Defendants an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

131.     As a result of the foregoing acts, Plaintiff is entitled to recover an amount no less than $1,000,000.00 in compensatory damages from Defendants in addition to all other amounts sought herein.

132.     In committing the acts alleged herein, Defendants acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages of at least $10,000,000.00 to adequately punish Defendants and to deter Defendants from continuing and repeating such conduct in the future.

## COUNT SIX
(Retaliation in Violation of NYCHRL § 8-101 et. seq.)

133.     Steinmetz repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

134.     Based upon the aforementioned facts, Plaintiff had reasonable belief that Defendants were engaged in unlawful conduct under NYCHRL § 8-101 et seq.

135.    Plaintiff acted in opposition to such unlawful conduct by making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities.

136.    Defendants had actual knowledge of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities.

137.    As a proximate result of Plaintiff's activities in respect of making good faith claims and/or complaints of religious discrimination to Defendants and appropriate authorities, Defendants engaged in adverse treatment of Plaintiff, including, inter alia, terminating her employment.

138.    Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

139.    The aforementioned acts of Defendants constitute unlawful retaliation against Plaintiff in violation of the provisions of NYCHRL § 8-101 et seq.

140.    As a proximate result of Defendants' aforementioned retaliation against Plaintiff, Plaintiff has and will continue to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation and other employment benefits.

141.    As a further proximate result of Defendants' actions, Plaintiff has and will continue to suffer irreparable and significant damage to her personal and professional good name and reputation.

142.    As a further proximate result of Defendants' actions taken because of Plaintiff's religion, Plaintiff has and will continue to suffer severe and lasting

embarrassment, humiliation and anguish and other incidental and consequential damages and expenses.

143.    As a result of the foregoing, Plaintiff is entitled to recover from Defendants an amount equal to the value of all compensation to be earned by Plaintiff had her employment not been interfered with, including all to be earned salary and bonuses, benefit payments, profit sharing, costs, attorney's fees and prejudgment interest at no less than 9%.

144.    As a result of the foregoing acts, Plaintiff is entitled to recover an amount no less than $1,000,000.00 in compensatory damages from Defendants in addition to all other amounts sought herein.

145.    In committing the acts alleged herein, Defendants acted in an outrageous and malicious manner with intent, oppression, gross negligence, malice, wanton disregard and indifference for Plaintiff's protected civil rights, as part of a continuing pattern of conduct, and Plaintiff is entitled to punitive damages of at least $10,000,000.00 to adequately punish Defendants and to deter Defendants from continuing and repeating such conduct in the future.

## ATTORNEY'S FEES AND COSTS

146.    Attorney's fees and costs are warranted in this matter as the undersigned, on behalf of Steinmetz have in good faith, attempted to negotiate a reasonable resolution with Defendants without having to refer this matter to this forum for adjudication, determination and final resolution on the merits.

## PUNITIVE DAMAGES – BAD FAITH

147.    It is presumed that parties to contracts undertake their respective obligations in good faith, with intent to deal fairly.  In light of Defendants' obvious and blatant bad faith, wrongdoing and breach of other duties, punitive damages should be assessed against Defendants so that it be deterred from attempting such harmful employment practices in the future.

## REQUEST FOR RELIEF

**WHEREFORE**, Steinmetz requests that this Court order the following relief in favor of Steinmetz:

I.    On Count One in the amount of not less than $10,000,000 plus interest and costs;

II.    On Count Two in the amount of not less than $10,000,000 plus interest and costs;

III.    On Count Three in the amount of not less than $10,000,000 plus interest and costs;

IV.    On Count Four in the amount of not less than $10,000,000 plus interest and costs;

V.    On Count Five in the amount of not less than $10,000,000 plus interest and costs, as well as an order restraining and enjoining Defendants from continuing to violate the violations described herein;

VI.   On Count Six in the amount of not less than $10,000,000 plus interest and costs, as well as an order restraining and enjoining Defendants from continuing to violate the violations described herein;

VII.  An award of prejudgment interest, costs, punitive damages (where applicable) and attorney's fees; and

VIII. Such other and further relief that the Court may deem just and proper.


### JURY DEMAND

Steinmetz demands a trial by jury of all issues triable by jury in this action.


Dated: New York, New York
       June 11, 2008

                              Respectfully submitted,

                              **SACK & SACK, ESQS.**

                              */s/ Jonathan S. Sack*
                              _____
                  By:         Jonathan S. Sack, Esq.  (JSS-1835)

                              Attorneys for Plaintiff
                              110 East 59th Street, 19th Floor
                              New York, New York 10022
                              Tel.: (212) 702-9000
                              Fax: (212) 702-9702